## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| **DENNIS MICHAEL SMITH,** | **CIVIL ACTION FILE NO.** |
| *Plaintiff*, | |
| **v.** | |
| **FEDERAL EXPRESS CORPORATION,** | **JURY DEMAND** |
| *Defendant*. | |

## COLLECTIVE ACTION COMPLAINT

**NOW COMES** Dennis Michael Smith (hereinafter "Plaintiff"), by and through her counsel, and asserts this Collective Action Complaint on behalf of himself, and all others similarly situated, against Defendant Federal Express Corporation (hereinafter "Defendant") for systemic violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*. (hereinafter "FLSA"), as well as for an individual violations for Title I of the Americans with Disabilities Act of 1990 (hereinafter the "ADA), and for individual violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 et. seq. (hereinafter "FMLA"). Plaintiff's Consent to Join is attached hereto as Exhibit "A." Plaintiff states more fully as follows:

*(Continued On the Next Page)*

## INTRODUCTION

1. Defendant is a private American company that shipping and receiving of packages on behalf of customers in the United States and the all over the globe. Defendant is headquartered in Memphis, Tennessee, and also includes operational sites in all over the United States, including Athens, Georgia.

2. The Plaintiff is a former employee of Defendant. The Plaintiff has suffered from arthritis, ADHD, and depression for some time as well as worked in a variety of positions, including as a delivery driver. In or about the end of June 2023 the Plaintiff requested intermittent FMLA leave to better address the effects of arthritis on his knee (as opposed to a designated ADA based accommodation). Plaintiff used one day of intermittent FMLA leave per week between July 2023 through to November 2023 to address his injured knee. Within a week of the taking intermittent FMLA leave in November 2023, Defendant terminated the Plaintiff for pretextual reasons. Accordingly, the Plaintiff has brought claims against Defendant for, among other claims, interference with the FMLA, retaliation under the FMLA, failure to provide necessary FMLA notices, and ADA based discrimination and retaliation based on previous requests for an accommodation for the treatment of the affects of his arthritis, ADHD, and depression on his ability to work.

3.     Plaintiff was also required to undergo two (2) different tests as without payment of his minimum wage and/or overtime for these tests. Defendant has a

practice and policy of requiring employees, such as Plaintiff, to participate in these required tests during the course of their usual business hours without compensation for any hours and/or overtime used in taking these medically necessary, work related tests. As a result of Defendant's practices, the Plaintiff has brought suit under a collective action for violation of the FLSA.

<u>JURISDICTION</u>

4.     Plaintiff bring this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*., the Family and Medical Leave Act, 29 U.S.C. §2601 *et. seq*., and the ADA, 42 U.S.C. §§ 12131-2 and 28 U.S.C. §§ 1331 and 1345. This Court has original jurisdiction pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1331, §1132(a)(1)(B), §1337;  42 U.S.C. §2003e-5(f), 28 U.S.C. §1345, 28 U.S.C. §1331, and 28 U.S.C. §1343(a); and,  29 U.S.C. §2617(a)(2), 29 U.S.C. §1132(e) and 29 U.S.C. §1132(f), and 28 U.S.C. §1331 and §1337.

<u>VENUE</u>

5.     Defendant is a Tennessee-based corporation with multiple Georgia offices, including a delivery center 1090 Mitchell Bridge Road, Athens, Georgia, 30606. Defendant may be served through its registered agent the Corporation Company, located at 410 Peachtree Parkway, Suite 4245, Cumming, Georgia 30041. Venue for this action properly lies in the Middle District of Georgia, Athens Division, pursuant to 42 U.S.C. §2003e-5(f)(3), 28. U.S.C. §1391(b) and §1391(c)(2), as a substantial

portion of the acts and commissions giving rise to this action occurred in the Middle District of Georgia. 28 U.S.C. § 1391(b).

## **FACTUAL ALLEGATIONS**
### Sub-Part A: FLSA Facts Regarding the Defendant & Plaintiff

6.     Defendant operates a package delivery and/or pick up point located at 1090 Mitchell Bridge Road, Athens, Georgia, 30606 (hereinafter "Distribution Center.")

7.     Defendant buys supplies and equipment out of the stream of interstate commerce.

8.     Defendant advertises its business via the Internet, and thus in the stream of interstate commerce.

9.     Defendant utilizes interstate credit/debit card processing in the course of its business.

10.    Defendant utilizes the interstate banking system in the course of its business.

11.    Defendant's customers drop off packages and pay for delivery by Defendant at Defendant's Distribution Center.

12.    Defendant operates in the interstate stream of commerce.

13.    In calendar year 2022, Defendant had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

14.     In calendar year 2022, Defendant had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

15.     In calendar year 2023, Defendant had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

16.     In calendar year 2024, Defendant had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

17.     Defendant an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act, 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a), for the years 2022 through 2024.

18.     For the calendar year 2022, Defendant was covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

19.     For the calendar year 2023, Defendant was covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

20.     For the calendar year 2024, Defendant was covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

21.     Defendant is an "employer" in an industry affecting commerce within the meaning of §3(d) of the Act, 29. U.S.C. §203(d).

22.     Defendant was an "employer" of Plaintiff, as defined in §3(d) of the FLSA, 29 U.S.C. §203(d), in 2022, 2023, and 2024.

23.     Defendant employed Plaintiff from approximately June 2021 through November 2023 (hereinafter the "Employment Period").

24.     During the Employment Period, Defendant employed Plaintiff in a variety of positions, including those of a courier who delivered and retrieved packages on behalf of Defendant.

25.     During the Employment Period, Defendant paid Plaintiff as an hourly employee; Plaintiff was not salaried.

25.     In or about February 2023, Defendant employed Plaintiff as a courier.

26.     In or about February 2023, Defendant, either directly or by and through its agent, required Plaintiff to attend a functional capacity exam (hereinafter "FCE") during Plaintiff's regular work hours during Plaintiff's Employment Period and for the benefit of the Defendant.

27.     In or about mid February 2023, Plaintiff participated in the FCE.

28.    The FCE required that Plaintiff drive one (1) hour of time round trip to attend and participate.

29.    The FCE required that Plaintiff use approximately one (1) hour to complete paperwork and wait for the physical testing portion of the FCE.

30.    The FCE required that Plaintiff use approximately four (4) hours to complete the physical testing portion of the FCE.

31.    Defendant did not pay Plaintiff for *any* time used in driving to and/or from the FCE.

32.    Defendant did not pay Plaintiff for *any* time used in completing paperwork or waiting for the physical portion the FCE.

33.    Defendant did not pay Plaintiff for *any* time used in completing the physical portion the FCE.

34.    In or about February 2023, Defendant, either directly or by and through its agent, required Plaintiff to attend an Independent Medical Exam (hereinafter "IME") during Plaintiff's regular work hours during Plaintiff's Employment Period and for the benefit of the Defendant.

35.    In or about March 2023, Plaintiff participated in the IME.

36     The IME required that Plaintiff drive two (s) hours of time round trip to attend and participate.

37.     The IME required that Plaintiff use approximately two (1) hours to complete paperwork and attend an interview with a doctor prior to the physical testing portion of the IME.

38.     The IME required that Plaintiff use approximately three (s) hours to complete the physical testing portion of the IME.

39.     Defendant did not pay Plaintiff for *any* time used in driving to and/or from the IME.

40.     Defendant did not pay Plaintiff for *any* time used in completing paperwork or responding to the Doctor's questions prior to the physical portion the IME or for *any* time used in completing the physical portion the IME.

### **DEFENDANT'S ACTIONS WERE "WILLFULL" UNDER THE FLSA**

41.     Defendant either knew, or acted with reckless indifference, that their failure to pay minimum wages and/or overtime wages of Plaintiff for work performed at the direction of the Defendant and/or its agent in conjunction with the FCE and/or IME violated FLSA.

42.     On information and belief, Defendant never sought any professional advice regarding their legal obligations under the FLSA during the Employment Period regarding payment for work performed at the direction of the Defendant and/or its agent in conjunction with the Plaintiff's required FCE and/or IME.

## COLLECTIVE ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of himself and all other similarly situated persons, pursuant to 29 U.S.C. § 216(b).

44.     Plaintiff seeks to represent the following two groups of similarly situated persons pursuant to 29 U.S.C. § 216(b):

a.     All persons who were, or are, employed by Defendant as an hourly employee at any time within three years prior to the filing of this Complaint who were required to participate in a functional capacity test during work hours and were neither paid minimum wage and/or who worked in excess of forty hours per week and were not paid at an overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) and were not paid their overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) (hereinafter the "FCE Collective").

b.     All persons who were, or are, employed by Defendant as an hourly employee at any time within three years prior to the filing of this Complaint who were required to participate in an independent medical exam during work hours and were neither paid minimum wage and/or who worked in excess of forty hours per week and were not paid at an overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) and were not paid their overtime rate of one-and-one-half

their regular rate of pay for all hours worked over forty (40) (hereinafter the "IME Collective").

45. The FCE Collective and the IME Collective are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number is dependent are in the sole possession of Defendant, upon information and belief, there are more than 25 members in the FCE Collective and the IME Collective, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims.

46. Plaintiff will fairly and adequately protect the interests of the members of the FCE Collective and the IME Collective and has retained counsel who is experienced and competent in the fields of wage and hour law and collective action litigation.

47. Questions of law and fact common to the members of FCE Collective and the IME Collective predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members of the FCE Collective and the IME Collective.

### Sub-Part B: Defendant's Underlying ADA & FMLA Based Facts

48.    Defendant has more than 10,000 employees world-wide.

49.    Defendant operates the Distribution Center where Plaintiff generally reported for work during the Employment Period.

50.     During the Employment Period, Defendant employed at least fifty (50) employees within seventy-five (75) miles of the Distribution Center in calendar years 2022, 2023, and 2024.

51.     Defendant has employed more than fifteen (15) employees for each working day in at least 20 or more calendar weeks during the Employment Period. As such, Defendant is subject to, and governed by, the ADA.

52.     Defendant is a "person" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e(b).

53.     During the Employment Period, Defendant, either directly or through a third-party administrator, acted as the administrator for Defendant's FMLA based leave practices and procedures.

### Sub-Part C: Plaintiff's Underlying ADA Facts Regarding Arthritis

54. Plaintiff has a clinical diagnosis of arthritis.

55. Plaintiff was diagnosed with arthritis in or about April 2019.

56. At all times during his employment for the Employment Term, Plaintiff suffered from the effects of arthritis, particularly on his knees.

57. Plaintiff's arthritis in his knees and its related effects affected Plaintiff during the Employment Term to such an extent as to affect Plaintiff's major life activities, such as, but not limited to, Plaintiff's ability to walk, drive, and /or climb stairs.

58. Accordingly, Plaintiff's condition(s) constitute a disability or disability under the ADA.

59. Plaintiff informed Defendant of his arthritis in his knees at the beginning of the Employment Term.

60. As a result of Plaintiff's informing Defendant of his arthritis in his knees, Defendant perceived Plaintiff as having a disability.

61. Plaintiff worked from approximately June 2021 through August 2022 without major performance complaints from Defendant.

62. Plaintiff regularly worked fifty (50) or more hours per week for Defendant in 2021 and 2022 and up to and /or more than forty (40) hours per week in 2023.

  Sub-Part D: Plaintiff's Underlying ADA Facts Regarding ADHD & Depression

63. Plaintiff has a clinical diagnosis of certain mental issues, specifically Attention Deficit Hyperactivity Disorder (hereinafter "ADHD") as well as depression.

64. Plaintiff was diagnosed with ADHD in or about 2022.

65. Plaintiff was diagnosed with depression in or about 2015.

66. At all times during his employment for the Employment Term, Plaintiff suffered from the effects of ADHD and depression, which include affecting his ability to concentrate, learn, think and work, especially when under stress.

67. Plaintiff's ADHD and depression affected Plaintiff during the Employment Term to such an extent as to affect Plaintiff's major life activities, such as, but not limited to, Plaintiff's ability to communicate, concentrate, and think.

68. Accordingly, Plaintiff's ADHD and depression are condition(s) that constitute a disability or disability under the ADA.

69. Plaintiff informed Defendant of his ADHD and depression at the beginning of the Employment Term.

70. As a result of Plaintiff's informing Defendant of his ADHD and depression, Defendant perceived Plaintiff as having a disability.

71. Plaintiff worked from approximately June 2021 through August 2022 without major performance complaints from Defendant.

72. Plaintiff regularly worked fifty (50) or more hours per week for Defendant in 2021 and 2022.

Sub-Part E: Defendant's Initial ADA Issues & Worker's Compensation

73. In or about July 2022, Plaintiff noticed that his existing arthritis was aggravated when working five to six day shifts, generally over fifty (50) hours per week, for Defendant.

74. Plaintiff is not an attorney and has no more than a rudimentary, laymen's understanding of the ADA.

75. In or about July 2022, Plaintiff requested an accommodation (hereinafter "Initial Accommodation Request") in the form of a reduced day schedule from Defendant.

76. Subsequent to Plaintiff's Initial Accommodation Request, Defendant did not analyze Plaintiff's job to determine its essential functions and purpose.

77. Subsequent to Plaintiff's Initial Accommodation Request, Defendant did not work with Plaintiff to identify what barriers exist to the Plaintiff's performance of his particular job.

78. Subsequent to Plaintiff's Initial Accommodation Request, Defendant did not review the Plaintiff's abilities and limitations, nor did Defendant provide a determination, either in writing or orally, as to which factors in the Plaintiff's job tasks and work environment posed difficulties due to Plaintiff's arthritis, ADHD, and/or depression.

79. Subsequent to Plaintiff's Initial Accommodation Request, Defendant did not engage with the Plaintiff, either in writing or orally, as to identify a possible range of accommodations for Plaintiff's work tasks and/or essential job functions, that would remove and/or alleviate the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression.

80. By way of example, Defendant did not discuss potential accommodations to alleviate the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression, such as, but not limited to: reassignment to other

14

positions, a reduced schedule of working three to four days per week, a change in seats, reassignment of duties, etc.

81. Subsequent to Plaintiff's Initial Accommodation Request, Defendant did not identify various possible accommodations for alleviating the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression, Defendant did not assess the effectiveness of each accommodation, and Defendant did not review the preference of the Plaintiff for each possible accommodation, and Defendant did not determine whether any of the various accommodation(s) would pose an undue hardship upon the employer.

82. In or about June 2023, Plaintiff observed another employee of Defendant, name unknown, was allowed to work a three (3) day work week schedule as a delivery driver.

83. In or about August 2022, Plaintiff's work caused injury to his right knee and Defendant directed Plaintiff to go a Georgia worker's compensation (hereinafter "Georgia WC") doctor. Defendant's proscribed Georgia WC doctor did not examine Plaintiff's right knee and arbitrarily and capriciously determined that Plaintiff could return to duty.

84. In or about August 2022, Plaintiff also visited a Veteran's Administration (hereinafter "VA") doctor. The VA doctor determined that Plaintiff's injury was

work related and required that Plaintiff take a five (5) day rest period to recover from the affects of the five day work week on Plaintiff's arthritis, ADHD, and depression.

85. Plaintiff continued to work for Defendant after his five days of rest in August 2022.

86. Plaintiff's continued work of a five day schedule aggravated Plaintiff's arthritis as well as negatively affected Plaintiff's ADHD and depression in or about September and October 2022.

87. In or about October 2022, Defendant denied any accommodation for Plaintiff's Initial Accommodation Request.

88. In or about October 2022, Defendant created a four day position on the response team and allowed Plaintiff to "bid" on the four day per week position, which was to begin in November 2022.

89. In or about October 2022, Defendant's representative informed Plaintiff that there was only one other employee with seniority interested in "bidding" on the four day per week position on the response team and that Defendant was actively discouraging this employee from bidding for the job.

90. On information and belief, Defendant knew department under which the four day per week position on the response team was to be eliminated in or about early 2023 and that Defendant directed Plaintiff towards a position it knew would be

eliminated under pretextual reasons as a means of terminating Plaintiff for his requests for accommodation under the ADA.

91. Subsequent to being awarded the new four day position in October 2022 but before beginning to work this four day position, Plaintiff's arthritis was aggravated due to Plaintiff's five day per week, fifty plus hours per week schedule, which resulted in Plaintiff's left knee becoming so arthritic as to prevent Plaintiff from working.

92. Between October 2022 and January 2023, Defendant determined the Plaintiff's aggravation to his left knee was work related and placed Plaintiff on limited duty, determined Plaintiff could not work, and allowed Plaintiff worker's compensation leave and temporary total disability pay.

93. Between October 2022 and January 2023, Plaintiff continued to see an orthopedic specialist for his arthritis complications.

94. Between October 2022 and January 2023, Plaintiff continued to attend physical therapy to recover from his arthritis complications.

95. Defendant did not challenge Plaintiff's worker's compensation leave and temporary total disability pay between October 2022 and January 2023.

 Sub-Part F: Defendant's Second & Third ADA Issues & Worker's Compensation

96. In or about January 2023, Plaintiff began employment for Defendant in a position that worked four (4) days a week and more than forty (40) hours per week.

97. In or about January 2023, Plaintiff noticed that his existing arthritis was greatly reduced when working four (4) shifts per week.

98. In or about February 2023, Defendant eliminated Plaintiff's position as a four (4) day per week employee.

99. In or about February 2023, Defendant offered Plaintiff a job working five (5) days per week or a 90 day term of unpaid leave for voluntary absence.

100. In or about February 2023, Plaintiff accepted and began working a five (5) day per week shift for Defendant as a delivery driver.

101. After working five (5) day shifts in February 2023, Plaintiff's arthritis was compounded by working the five (5) day shifts.

101. After working five (5) days shifts in 2023, the affects of Plaintiff's ADHD and depression were compounded by the five (5) day work weeks.

102. In or about February 2023, Plaintiff requested a second accommodation (hereinafter "Second Accommodation Request") in the form of a reduced day schedule from Defendant.

103. Subsequent to Plaintiff's Second Accommodation Request, Defendant did not analyze Plaintiff's job to determine its essential functions and purpose.

104. Subsequent to Plaintiff's Second Accommodation Request, Defendant did not work with Plaintiff to identify what barriers exist to the Plaintiff's performance of his particular job.

105. Subsequent to Plaintiff's Second Accommodation Request, Defendant did not review the Plaintiff's abilities and limitations, nor did Defendant provide a determination, either in writing or orally, as to which factors in the Plaintiff's job tasks and work environment posed difficulties due to Plaintiff's arthritis, ADHD, and/or depression.

106. Subsequent to Plaintiff's Second Accommodation Request, Defendant did not engage with the Plaintiff, either in writing or orally, as to identify a possible range of accommodations for Plaintiff's work tasks and/or essential job functions, that would remove and/or alleviate the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression.

107. By way of example, Defendant did not discuss potential accommodations to alleviate the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression, such as, but not limited to: reassignment to other positions, a reduced schedule of working three to four days per week, a change in seats, reassignment of duties, etc.

108. Subsequent to Plaintiff's Second Accommodation Request, Defendant did not identify various possible accommodations for alleviating the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression, Defendant did not assess the effectiveness of each accommodation, and Defendant did not review the preference of the Plaintiff for each possible accommodation, and

Defendant did not determine whether any of the various accommodation(s) would pose an undue hardship upon the employer.

109. In or about February 2023, Defendant took action against Plaintiff for requesting an ADA based accommodation(s) for the effects of his arthritis, ADHD, and depression.

110. After Plaintiff's Second Accommodation Request, Defendant required Plaintiff to take the FCE in or about mid-February 2023.

111. After Plaintiff's Second Accommodation Request, Defendant required Plaintiff to take the IME in or about March 2023.

112. After Plaintiff's Second Accommodation Request, Defendant required Plaintiff to continue working the five (5) day work shift through the term in which Plaintiff participated in the FCE and IME.

113. After Plaintiff's Second Accommodation Request, Defendant began to "nit pick" Plaintiff's work and began an increased surveillance of Plaintiff's alleged "work performance" despite Plaintiff continuing to work in an acceptable manner consistent with Defendant's requirements.

114. Some time in or about March 2023, Plaintiff made an additional request for accommodation(s) in the form of the use and access to a hand truck to aid in deliveries and/or other means of accommodation(s) to alleviate the effects of his arthritis, ADHD, and depression (hereinafter the "Third Accommodation Request.")

115. Subsequent to Plaintiff's Third Accommodation Request, Defendant did not analyze Plaintiff's job to determine its essential functions and purpose.

116. Subsequent to Plaintiff's Third Accommodation Request, Defendant did not work with Plaintiff to identify what barriers exist to the Plaintiff's performance of his particular job.

117. Subsequent to Plaintiff's Third Accommodation Request, Defendant did not review the Plaintiff's abilities and limitations, nor did Defendant provide a determination, either in writing or orally, as to which factors in the Plaintiff's job tasks and work environment posed difficulties due to Plaintiff's arthritis, ADHD, and/or depression.

118. Subsequent to Plaintiff's Third Accommodation Request, Defendant did not engage with the Plaintiff, either in writing or orally, as to identify a possible range of accommodations for Plaintiff's work tasks and/or essential job functions, that would remove and/or alleviate the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression.

119. By way of example, Defendant did not discuss potential accommodations to alleviate the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression, such as, but not limited to: reassignment to other positions, a reduced schedule of working three to four days per week, a change in seats, reassignment of duties, etc.

21

120. Subsequent to Plaintiff's Third Accommodation Request, Defendant did not identify various possible accommodations for alleviating the difficulties in performing work tasks posed by Plaintiff's arthritis, ADHD, and/or depression, Defendant did not assess the effectiveness of each accommodation, and Defendant did not review the preference of the Plaintiff for each possible accommodation, and Defendant did not determine whether any of the various accommodation(s) would pose an undue hardship upon the employer.

121. In or about March and April 2023, Defendant continued to "nit pick" and target Plaintiff with alleged violations of Defendant's policy under pretextual terms as a result of Plaintiff's Third Accommodation Request.

122. In or about March and April 2023, Plaintiff continued to work a five (5) day shift and more than forty (40) hours per week.

123. The five (5) day shift and work in excess of forty (40) hours per week in or about March and April 2023 aggravated the effects of Plaintiff's arthritis, ADHD, and depression.

124. In or about April 2023, Plaintiff's working a five (5) day shift and work in excess of forty (40) hours per week contributed to Plaintiff sustaining an additional job related injury.

125. As a result of the injury sustained while working for Defendant in or about April 2023, Plaintiff returned to a medical clinic that advised Plaintiff to restrict his work to a four day work week.

126. Subsequently, Plaintiff took some approximately three weeks off from work as a result of his injury in April and early May 2023.

127. Plaintiff returned to work in or about early May 2023 for Defendant at his previous position.

128. In or about May 2023, Plaintiff continued to work a five (5) day shift and work in excess of forty (40) hours per week. This work continued to aggravate Plaintiff's arthritis, ADHD, and depression.

129. In or about July 24, 2023, Plaintiff made a complaint to the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") regarding Plaintiff's request for accommodations and Defendant's refusal to provide accommodations.

130. After Plaintiff made a complaint to the EEOC for violation of the ADA, Plaintiff subsequently amended his complaint to the EEOC.

131. Plaintiff continued to work for Defendant after filing his complaint(s) for violation of the ADA with the EEOC.

132. Defendant was aware of Plaintiff's complaint(s) of discrimination based on his disabilities with the EEOC.

133. After Plaintiff's complaint(s) for violation of the ADA were charged against Defendant, Defendant ultimately terminated Plaintiff under pretextual reasons in or about November 2023.

## ADMINISTRATIVE CONDITIONS PRECENDANT

134. Plaintiff satisfied all conditions precedent to filing this action, including filing Charges of Discrimination with the U.S. EEOC in a timely manner, within 180 days of the alleged incidents See the attached Exhibit "B."

135. Plaintiff received his Notice of Right to Sue from the EEOC, and this lawsuit is being filed within ninety (90) days of that receipt. See the attached Exhibit "C."

## Sub-Part G: Plaintiff's Intermittent FMLA Leave Based Facts

136. Plaintiff has suffered from arthritis for several years prior to the Employment Term.

137. Plaintiff suffered from arthritis during the Employment Term.

138. Plaintiff has continued medical treatment with his doctor since at least July 2022, including at least two visits for treatment and/or follow up treatment for the arthritis in calendar years 2022, 2023, and 2024.

139. In or about June 2023, Defendant informed Plaintiff of the availability of FMLA leave for his arthritis treatment and complications.

140. In or about June 2023, Plaintiff requested intermittent FMLA leave from Defendant.

141. Following Defendant's verbal approval of Plaintiff's June 2023 FMLA request, Defendant did not provide Plaintiff with a written "eligibility notice" required under 29 C.F.R. §825.300(b).

142. Further, Defendant did not provide Plaintiff with an additional written copy of the "rights & responsibilities notice" required under 29 C.F.R. §825.300(c).

143. Nor, at this time, did Defendant opt to use – and provide in writing to Plaintiff - the Department of Labor's combined "Notice of Eligibility, and Rights & Responsibilities" form, as allowed 29 C.F.R. §825.300(b)(2).

144. Nor, at this time, did Defendant opt to use – and provide in writing to Plaintiff - the Department of Labor's combined "Notice of Eligibility, and Rights & Responsibilities" form, as allowed 29 C.F.R. §825.300(b)(2).

145. Of particular interest, if Defendant was going to require Plaintiff to submit a completed medical certification, that requirement should have been disclosed in writing on a new "rights & responsibilities notice" pursuant to 29 C.F.R. §825.300(c)(1)(ii), §825.300(c)(3) and §825.300(c)(4); 29 C.F.R.§825.305(a). Additionally, the "rights & responsibilities notice" must state the time period in which the medical certification must be returned and the consequences of failing to provide a completed medical certification form. 29 C.F.R. §825.305(b), §825.305(d) and §825.300(c)(1)(ii).

146. Once a determination was made that Plaintiff was potentially eligible for FMLA leave, Defendant should have then provided him, within five (5) days, with a new "designation notice." See 29 C.F.R. §825.300(d); see also WHD form WH-382.

147. Defendant did not provide Plaintiff with a written "designation notice" related to his intermittent FMLA medical leave from approximately June 2023 through his termination. See 29 C.F.R. §825.300(d); see also WHD form WH-382.

148. Under 29 C.F.R. §825.305(b), an employer must provide an employee with at least fifteen (15) days in which to return a medical certification form.

149. However, because Defendant did not provide Plaintiff with a written "rights & responsibilities notice," 29 C.F.R. §825.300(c), which would have included the time-period requirement and a description of the consequences for failing to return a medical certification form, Defendant is precluded from taking any adverse action against Plaintiff related to any issue which would have been discussed in the "rights & responsibilities notice." See 29 C.F.R. §825.300(c)(1)(ii) and §825.305(d).

### Sub-Part H: Plaintiff's Intermittent FMLA Leave Based Facts

150.  Plaintiff has been suffering from the effects of his arthritis for many years.

151.  On or about June 2023, Defendant employed Plaintiff for a period of more than a year.

152. Plaintiff worked more than 1,250 hours for the Defendant between June 2022 and June 2023.

153. Plaintiff worked generally without complaint or reprimand for the Defendant during the period between June 2022 and June 2023.

154. Sometime in mid-June 2023, and with the direction of his medical provider, Plaintiff requested intermittent FMLA leave from the Defendant to better remedy the affects of arthritis, including limiting Plaintiff to working four (4) days per week.

155. On or about June 2023, Defendant authorized Plaintiff's intermittent FMLA leave. Defendant authorized Plaintiff's FMLA leave's certification for an unknown term but provided no Rights & Responsibilities form or other FMLA related documents.

156. Subsequently after providing Plaintiff with intermittent FMLA leave, Defendant terminated Plaintiff's five (5) day a week position and provided work as a "gopher", just providing intermittent tasks such as retrieving undelivered or unretrieved "bulk" picks, handling "left behind" or overflow deliveries on a four (4) day per week, ten hour per day schedule.

157. Defendant's representatives complained about Plaintiff's use of intermittent FMLA leave during the summer and early fall of 2023, and regularly threatened to punish Plaintiff for working hours that approached or exceeded his four day, ten hour per day schedule by reducing Plaintiff's hours.

158. On at least two (2) occasions in the fall of 2023, Defendant's representative reduced Plaintiff's daily shift from ten (10) hours to six (6) or less hours as a punishment for taking intermittent FMLA leave.

159. In or about late October 2023, Defendant suspended Plaintiff under pretextual reasons when in reality Defendant suspended Plaintiff from work for requesting and using intermittent FMLA leave in the preceding months.

### COUNT I:  WILLFUL FAILURE TO PAY MINIMUM WAGE
### (Individual FLSA Claim Asserted By Plaintiff Against Defendant)

160. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint.

161. At all relevant times, Defendant was and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

162. At all relevant times, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

163. On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

164. At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

165. The minimum wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

166. The FLSA requires employers, such as Defendant, to minimally compensate employees, such as Plaintiff, at the federal minimum wage for each hour worked.

167. Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff to attend a Functional Capacity Test during regular work hours without payment of any federal minimum wage and/or his regular rate.

168. Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff to attend an Independent Medical Exam during regular work hours without payment of any federal minimum wage and/or his regular rate.

169. Defendant is liable to Plaintiff for, inter alia, the full amount of minimum wage at a rate of $7.25 per hour for all hours worked during the statutory period.

169. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

170. Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

171. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant his full unpaid minimum wages and/or regular rate for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT II:  WILLFUL FAILURE TO PAY MINIMUM WAGE
### (Collective FLSA Claim Asserted By Plaintiff Against Defendant)

172. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint.

173. Plaintiff seeks to represent the following collective group of employees:

a.      All persons who were, or are, employed by Defendant as an hourly employee at any time within three years prior to the filing of this Complaint who were required to participate in a functional capacity test during work hours and were neither paid minimum wage and/or who worked in excess of forty hours per week and were not paid at an overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) and were not paid their overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) (hereinafter the "FCE Collective").

b.      All persons who were, or are, employed by Defendant as an hourly employee at any time within three years prior to the filing of this Complaint who were required

to participate in an independent medical exam during work hours and were neither paid minimum wage and/or who worked in excess of forty hours per week and were not paid at an overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) and were not paid their overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) (hereinafter the "IME Collective")(collectively hereinafter the "FCE and IME Collective").

174. At all relevant times, Defendant was and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

175. At all relevant times, Plaintiff and other members of the FCE and IME Collective were engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

176. On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

177. At all relevant times, Defendant employed and or continues to employ Plaintiff and members of the FCE and IME Collective within the meaning of the FLSA.

178. The minimum wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff and members of the FCE and IME Collective.

179. The FLSA requires employers, such as Defendant, to minimally compensate employees, such as Plaintiff and other members of the FCE and IME Collective, at the federal minimum wage for each hour worked.

31

180. Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff and other members of the FCE and IME Collective to attend a Functional Capacity Exam and/or an Independent Medical Exam during regular work hours without payment of any federal minimum wage and/or his regular rate.

181. Defendant is liable to Plaintiff for, inter alia, at least the full amount of minimum wage at a rate of $7.25 per hour and/or regular rate for all hours worked during the statutory period.

182. Defendant did not compensate Plaintiff and members of the FCE and IME Collective at the minimum wage for all time worked during the relevant time period.

183. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

184. Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other members of the FCE and IME Collective.

185. Due to Defendant's FLSA violations, Plaintiff and other members of the FCE and IME Collective are entitled to recover from Defendant his full unpaid minimum wages and/or regular rate for each workweek within the limitations period, an

additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

### COUNT III:  WILLFUL FAILURE TO PAY OVERTIME WAGES
### (Individual FLSA Claim Asserted By Plaintiff Against Defendant)

186. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint.

187. At all relevant times, Defendant was and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

188. At all relevant times, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

189. On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

190. At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

191. The minimum wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

192. The FLSA requires employers, such as Defendant, to minimally compensate employees, such as Plaintiff, at a rate of one-and-one-half their regular rate of pay for each hour worked in excess of forty (40) hours per work week.

193. Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff to attend a Functional Capacity Test during regular work hours without payment of any federal minimum wage and/or his regular rate for any hours worked in excess of forty (40) in a week.

194. Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff to attend an Independent Medical Exam during regular work hours without payment of any federal minimum wage and/or his regular rate for any hours worked in excess of forty (40) in a week.

195. Defendant is liable to Plaintiff for, inter alia, the full amount of one-and-one-half times his regular rate per hour for all hours worked in excess of forty (40) during the statutory period.

196. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

197. Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

198. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant his full unpaid minimum wages and/or regular rate for each workweek

within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT IV:  WILLFUL FAILURE TO PAY OVERTIME WAGES
### (Collective FLSA Claim Asserted By Plaintiff Against Defendant)

199. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint.

200. Plaintiff seeks to represent the following collective group of employees:

a.      All persons who were, or are, employed by Defendant as an hourly employee at any time within three years prior to the filing of this Complaint who were required to participate in a functional capacity test during work hours and were neither paid minimum wage and/or who worked in excess of forty hours per week and were not paid at an overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) and were not paid their overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) (hereinafter the "FCE Collective").

b.      All persons who were, or are, employed by Defendant as an hourly employee at any time within three years prior to the filing of this Complaint who were required to participate in an independent medical exam during work hours and were neither paid minimum wage and/or who worked in excess of forty hours per week and were not paid at an overtime rate of one-and-one-half their regular rate of pay for all hours

worked over forty (40) and were not paid their overtime rate of one-and-one-half their regular rate of pay for all hours worked over forty (40) (hereinafter the "IME Collective")(collectively hereinafter the "FCE and IME Collective").

201. At all relevant times, Defendant was and continues to be, an employer engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

202. At all relevant times, Plaintiff and other members of the FCE and IME Collective were engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

203. On information and belief, at all relevant times, Defendant had gross annual revenues in excess of $500,000.

204. At all relevant times, Defendant employed and or continues to employ Plaintiff and members of the FCE and IME Collective within the meaning of the FLSA.

205. The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff and members of the FCE and IME Collective.

206. Plaintiff and members of the FCE and IME Collective regularly worked in excess of forty (40) hours per workweek.

207. The FLSA requires employers, such as Defendant, to minimally compensate employees, such as Plaintiff and other members of the FCE and IME Collective, at one-and-a-half their regular rate of pay for each hour worked in excess of forty (40) hours in a work week.

208. Defendant engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiff and other members of the FCE and IME Collective to attend a Functional Capacity Exam and/or an Independent Medical Exam during regular work hours without payment of any federal minimum wage and/or his regular rate or payment of one-and-a-half their regular rate for all work performed in excess of forty (40) hours in a work week.

209. Defendant is liable to Plaintiff for, inter alia, at least the full amount of minimum wage at a rate of $7.25 per hour and/or regular rate for all hours worked during the statutory period.

210. Defendant did not compensate Plaintiff and members of the FCE and IME Collective at the minimum wage for all time worked during the relevant time period.

211. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

212. Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other members of the FCE and IME Collective.

213. Due to Defendant's FLSA violations, Plaintiff and other members of the FCE and IME Collective are entitled to recover from Defendant his full overtime wages

of one-and-one-half his regular rate for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT V: TERMINATION UNDER THE ADA

214. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint.

215. Title I of the ADA prohibits covered entities from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

216.   Because his arthritis, ADHD, and depression substantially limits at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

217. Plaintiff was fully qualified to work in her position as a driver and could and did perform all of the essential functions of the position and had worked in that position for  Defendant for more than a year.

218. Defendant is a covered employer to which the ADA applies.

219. Defendant discriminated against the Plaintiff by terminating him on the basis of disability.  42 U.S.C. §§ 12102, 12111, 12112; 29 C.F.R. §§ 1630.2, 1630.4.

220. Because of Defendant's discriminatory conduct, the Plaintiff suffered significant monetary loss, including loss of earnings and other benefits; lost opportunities for advancement; and severe emotional pain, suffering, and other non-pecuniary losses.

221.  Defendant's violations of the ADA was willful and Plaintiff seeks liquidated damages for each violation.


## COUNT VI:  FAILURE TO PROVIDE NOTICES UNDER THE FMLA

222. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint

223. During the Employment Term, Defendant was an "employer" as defined in 29 U.S.C. §2611(4).

224. During the Employment Term and having worked in excess of 1,250 hours in the twelve months preceding her multiple 2023 leave requests, Plaintiff was an "eligible employee" as defined in 29 U.S.C. §2611(2).

225. Plaintiff's continued treatment for arthritis as well as his inability to perform one (1) or more of the essential functions of her job constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

226. Immediately preceding his July 2023 intermittent leave, the Plaintiff was entitled to twelve (12) weeks or less of FMLA leave pursuant to 29 U.S.C. §2612(a)(1)(D).

227. Regarding the Plaintiff's intermittent FMLA leave in July 2023 through November 2023 Defendant failed to provide him with the "eligibility notice" required under 29 C.F.R. §825.300(b).

228. Regarding the Plaintiff's intermittent FMLA leave in July 2023 through November 2023, Defendant failed to provide him with the "rights & responsibility notice" required under 29 C.F.R. §825.300(c).

229. Regarding the Plaintiff's intermittent FMLA leave in July 2023 through November 2023, Defendant failed to provide him with the "Notice of Eligibility, and Rights & Responsibility" as provided under 29 C.F.R. §825.300(b)(2).

230. Regarding the Plaintiff's intermittent FMLA leave in July 2023 through November 2023, Defendant failed to provide him with a written copy of the "designation notice" required under 29 C.F.R. §825.300(d).

231. Regarding the Plaintiff's FMLA leave in July 2023 through November 2023, Defendant failed to provide him with the "rights & responsibilities notice" required under 29 C.F.R. §825.300(c).

232. Regarding the Plaintiff's FMLA leave in July 2023 through November 2023, Defendant failed to provide him with the "Notice of Eligibility, and Rights & Responsibilities" form, as allowed under 29 C.F.R. §825.300(b)(2).

233. Defendant's failure to provide the mandated notices constitutes an illegal interference with the Plaintiffs' rights under the FMLA in violation of 29 U.S.C. §2615(a)(1) and 29 C.F.R. §825.300(e). Plaintiff is entitled to recover his lost wages, liquidated damages in an equal amount, her reasonable attorneys' fees and costs, and to be reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1)(A), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).

## COUNT VII: ILLEGAL INTERFERENCE WITH FMLA RIGHTS

234. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint

235. Plaintiff was employed by Defendant for at least twelve months, and who had performed at least 1,250 hours of service during the previous twelve-month period. *Id.* § 2611(2).

236. Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a).

237. The FMLA"s "prohibition against „interference" prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c).

238. "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.*

239. Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id.* § 825.220(b); 29 U.S.C. § 2617.

240. Defendant discriminated against Plaintiff in violation of the FMLA when Defendant terminated Plaintiff several days after he requested FMLA leave and/or returned from taking intermittent FMLA-protected leave, and/or while regularly taking FMLA leave in the preceding months, thereby interfering with Plaintiff"s right to reinstatement and other rights under the FMLA.

241. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

242. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

243. Plaintiff is also entitled to liquidated damages under 29 U.S.C. §2617(a)(1)(A)(iii) as Defendant has not acted in good faith and there are no reasonable grounds for believing they were not violating the FMLA.

244. Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B).

245. Plaintiff is entitled to costs and reasonable attorney's fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).


## COUNT VIII: RETALIATION FOR TAKING FMLA LEAVE

246. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint.

247. Plaintiff was employed by Defendant for at least twelve months, and had performed at least 1,250 hours of service during the previous twelve-month period. *Id.* § 2611(2).

248.   The FMLA makes it unlawful for an employer to discriminate or retaliate against an employee who exercises her right to family care leave. 29 U.S.C. § 2615(a)(1)("It shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."); 29 U.S.C. 2615(a)(2)("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.")

249. Defendant retaliated against Plaintiff because he exercised her rights under the FMLA, by, *inter alia,* terminating Plaintiff's employment directly after he returned from approved intermittent medical leave in or about November 2023.

250.   As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered special damages.

251. Plaintiff is also entitled to liquidated damages under 29 U.S.C. §2617(a)(1)(A)(iii) as Defendant has not acted in good faith and there are no reasonable grounds for believing they were not violating the FMLA.

252. Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B).

252. Plaintiff is entitled to costs and reasonable attorney's fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).


**COUNT IX:  FAILURE TO REINSTATE PLAINTIFF UNDER THE FMLA**

253. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint

254. During the Employment Term Defendant was an "employer" as defined in 29 U.S.C. §2611(4).

255. During the Employment Term and having worked in excess of 1,250 hours in the twelve months preceding her multiple 2022 leave requests, Plaintiff was an "eligible employee" as defined in 29 U.S.C. §2611(2).

256. Plaintiff's continued treatment arthritis, as well as his inability to perform one (1) or more of the essential functions of her job constituted a "serious health condition" as defined in 29 U.S.C. §2611(11).

257. Immediately preceding his July 2023 through November 2023 intermittent leave, the Plaintiff was entitled to twelve (12) weeks or less of FMLA leave pursuant to 29 U.S.C. §2612(a)(1)(D).

258. Plaintiff began his intermittent leave which should have been designated as FMLA leave on a weekly basis for the term July 2023 through November 2023.

259. Defendant terminated Plaintiff's employment on or about November 2023

260. Defendant's termination of Plaintiff's employment immediately following designated FMLA leave (or what should have been designated FMLA leave) constitutes a violation of 29 U.S.C. §2614(a)(1) (job restoration rights), an impermissible interference with the Plaintiff's rights under the FMLA in violation of 29 U.S.C. §2615(a)(1), and unlawful termination under 29 U.S.C. §2615(a)(2). Plaintiff is entitled to recover her lost wages, liquidated damages in an equal amount, her reasonable attorneys' fees and costs, and to be reinstated to the same or equivalent position. 29 U.S.C. §2617(a)(1)(A), 29 U.S.C. §2617(a)(3) and 29 C.F.R. §825.400(c).

## **COUNT X – ADA – RETALIATION**

261. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred-fifty-nine (159) of this Complaint

262. Plaintiff engaged in statutorily protected activity by opposing conduct and actions made unlawful under the ADA.

263. Plaintiff engaged in protected activity when he complained about discrimination and harassment based upon his status as a disabled person and/or his perceived status as a disabled person

264. In retaliation for her complaints, Plaintiff was fired.  The stated reasons, in each case, were pretextual.

46

265. There is a causal connection between the Plaintiff's complaint(s) and the materially adverse actions taken against them by Defendant.

266. The retaliation endured by Plaintiff would dissuade a reasonable employee from making complaints of discrimination and harassment.

267. Defendant retaliated against Plaintiff for engaging in protected activity in violation of Section 503 of the ADA, 42 U.S.C. §12203.

268. The unlawful employment practices described above were intentional, and were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

269. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation, emotional distress, inconvenience, humiliation, and other indignities.

270. Plaintiff is entitled to damages including back pay and lost benefits, front pay, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

## JURY TRIAL

271. Plaintiff demands a jury trial as to all issues triable by a jury trial.

## PRAYER FOR RELIEF

272. **WHEREFORE**, Plaintiffs respectfully requests that this Court:

A. Grant Plaintiff a trial by jury as to all triable issues of fact;

B. Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons in the FCE and IME Collective  as defined herein, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b) and tolling of the statute of limitations;

C. A declaratory judgment that Defendant's practices complained of herein are unlawful under the FLSA;

D. An award in the amount of the unlawfully unpaid minimum wages in violation of the FLSA to Plaintiff and the FCE and IME Collective;

E. An award in the amount of the liquidated damages equal to the unlawfully unpaid minimum wages in violation of the FLSA to Plaintiff and the FCE and IME Collective;

F. An award in the amount of the unlawfully unpaid overtime wages in violation of the FLSA to Plaintiff and the FCE and IME Collective;

G. An award in the amount of the liquidated damages equal to the unlawfully unpaid overtime wages in violation of the FLSA to Plaintiff and the FCE and IME Collective;

H. That, pursuant to 29 U.S.C. §2617(a)(1), issue an Order that Defendant violated the Family and Medical Leave Act by (1) failing to provide the notices required under the FMLA, and (2) by terminating Plaintiff for exercising and/or attempting to exercise his rights under the FMLA;

I. That, pursuant to 29 U.S.C. §2617(a)(1)((A)(i), issue an Order that Defendant be ordered to pay Plaintiff back wages and lost benefits from the date she would have returned from FMLA leave to date of judgment;

J. That, pursuant to 29 U.S.C. §2617(a)(1)((A)(ii), issue an Order that Defendant pay Plaintiff interest on the value of his  back wages and lost benefits from the date she would have returned from FMLA leave to date of judgment;

K. That, pursuant to 29 U.S.C. §2617(a)(1)((A)(iii), issue an Order that Defendant pay Plaintiff liquidated damages in an amount equal to her back wages, lost benefits and interest thereon;

L. That, pursuant to 29 U.S.C. §2617(a)(1)((B),  issue an Order that Defendant reinstate Plaintiff to her last-held position (or equivalent) with the same hourly wages and benefits;

M. That, pursuant to 29 U.S.C. §2617(a)(3) and 29 U.S.C. §1132(g), issue an Order that Defendant pay Plaintiff's reasonable attorneys' fees and costs of this action; and,

N. Enter a judgment declaring that Plaintiffs' rights under the ADA have been violated by Defendant;

O. Issue an Order that Defendant pay lost income, prejudgment interest, compensatory damages and punitive damages to Plaintiff to fully compensate her for her injuries caused by Defendant's discriminating, harassing and retaliatory conduct, pursuant to and within the statutory framework of Section Section 503 of the ADA, 42 U.S.C. §12203;

P. That the Court issue a declaratory judgment that the Defendant discriminated against Plaintiff in violation of the ADA;

Q. That the Court issue an Order that Defendant pay Plaintiff back pay with interest for violation of the ADA;

R. That the Court issue an Order that Defendant pay Plaintiff interest on all back pay recoverable against the Defendant for violation of the ADA;

S. That the Court issue an Order that Defendant pay Plaintiff compensatory and punitive damages against Defendant for violation of the ADA;

T. That the Court issue an Order that Defendant pay Plaintiff's attorney's fees and costs in this matter; and,

U. Issue an Order as to any such other and further relief to which Plaintiff may be entitled.

Respectfully submitted this tenth (10th) day of February, 2025.

*/s/ Peter H. Steckel*
Peter H. Steckel
Georgia Bar Number 491935
*Counsel for Plaintiff*

Steckel Law, L.L.C.
1120 Ivywood Drive
Athens, Georgia 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com